UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**STEVEN HAROLD JACKSON**  **PLAINTIFF**
**ADC #116602**

v.  No: 3:19-cv-00324 KGB-PSH

**TERRY MILLER**  **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

#### I. Introduction

Plaintiff Steven Harold Jackson commenced this case by filing a complaint pursuant to 42 U.S.C. § 1983 on November 14, 2019, while incarcerated at the Arkansas Division of Correction's Ester Unit (Doc. No. 2). He has since been released. *See* Doc. No. 41. At the Court's direction, Jackson filed two amended

complaints to clarify his claims. Doc. Nos. 13 & 17. He sues Clay County Sheriff Terry Miller in his official and personal capacities and seeks compensatory damages. Doc. No. 17 at 1-2 & 5. He claims that he developed a staph infection because of a leaking toilet in his cell the Clay County Detention Center ("CCDC"). *Id.* at 4. He further asserts that he did not receive adequate and timely medical care. Specifically, Jackson's second amended complaint asserts that "Sheriff Miller is over all the parties involved . . . he knew about the problem with sewer." *Id.* at 4. Jackson also asserts that Miller was responsible for him not receiving adequate medical care.[1] *Id.*

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts filed by Miller (Doc. Nos. 43-45). Although Jackson was notified of his opportunity to file a response, he did not do so. He also failed to file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. *See* Doc. No. 46. Because Jackson failed to controvert the facts set forth in Miller's statement of facts, Doc. No. 45, those facts are deemed admitted. *See* Local Rule 56.1(c). Miller's statement of facts, and the

---

[1] In his amended complaint, Jackson complained that he was not provided grievance forms. Doc. No. 17 at 4. The Court did not construe that allegation as a claim. Inmates do not have a constitutionally protected right to a grievance procedure or to require prison officials to comply with internal rules or procedures. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). *See also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

2

other pleadings and exhibits in the record, establish that the material facts are not in dispute, and he is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or

undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

On February 28, 2019, Jackson was arrested and booked into the CCDC based on various drug related charges, including possession of methamphetamine and marijuana. *Booking Sheet* (Doc. No. 45-2) at 8. He developed lesions under his arms and on his nose while there, which he attributes to a staph infection from sewer water leaking from the toilet in his cell. In his deposition, Jackson testified that the toilet leak was confined to the toilet area and did not spread to the floors or the bunks. Jackson slept on a bottom bunk. *Deposition Testimony of Steven Jackson* (Doc. No. 45-3) at 11. He claims that the inmates were provided with towels or blankets to place around the toilet to stop the spread of the leaked water. *Id.* at 12. The water did not reach his bunk. *Id.* Jackson testified that he spoke to jailers named Mike, Nick, and Dave about fixing the leak but they only provided rags to block the leak.

*Id.* at 15-17. According to Jackson, he was afforded showers on Mondays, Wednesdays, and Fridays while he was incarcerated at the CCDC, and he was provided soap and supplies for his showers. *Id.* at 13. He was also provided with cleaning supplies three times a week. *Id.* at 14.

In his deposition, Jackson testified that he became sick five or six days after he was placed in his cell at the CCDC. *Id.* at 17. He had knots or boils under his arms and his face and nose were swollen. *Id.* He was told he would have to wait until the following week to see the doctor. *Id.* A few days later, EMTs (emergency technicians) arrived at the detention center to see another inmate; Jackson testified that he begged officers to allow him to see the EMTs, but they refused. *Id.* at 17-18 & 23. A few days later, the boils opened up and began to drain, and he was immediately taken to the hospital in Piggott, Arkansas. *Id.* at 18 & 23. Records show that Jackson was taken to the Piggott Community Hospital on March 12, 2019, with complaints of knots under his arm, on his nose, and also abdominal pain he had been experiencing for a couple of weeks. *Inmate Release Report* (Doc. No. 45-2 at 18); *Piggott Community Hospital Records* (Doc. No. 45-4) at 21, 63-64. He was transferred to St. Bernard's Medical Center the same day. *St. Bernard's Medical Center Records* (Doc. No. 45-5) at 4-8. His history of present illness states, in relevant part:

> Pt is a 55y/o male with a H/O carpal tunnel, HTN, cirrhosis, TB, Hep C, anxiety, substance abuse who presented to the ER at Piggott Hospital

> with C/O abdominal pain. States pain began 4 weeks ago. He wanted to his PCP, but then was incarcerated for the last two weeks and was just released prior to presenting to the ER. Pt states the pain has intensified over the last couple of weeks and wanted to come to the ER, but couldn't because of the incarceration. Pain is 10/10, burning and radiating from his liver to his back. He has a H/O heavy ETOH and marijuana use, but it has used in 2 weeks because of being jailed. HE also admits to some N/V, fevers and chills. Pt also developed facial erythema and lesions in his arm pits over the last 2-3 days. Both of which are getting worse with pain and spreading. The lesions under his arms are draining. . . .

*Id.* at 7. Jackson was treated and released on March 16, 2019. *Id.* His records note that he is an alcoholic who drinks 12-15 beers and a half pint of whiskey per day and also uses methamphetamine and marijuana. *Id.* at 8.

Defendant Sheriff Terry Miller submitted an affidavit explaining that he is currently the Sheriff of Clay County, Arkansas, and served in that role when Jackson was incarcerated in the CCDC. *Affidavit of Terry Miller* (Doc. No. 45-1) at ¶1. Miller never saw or spoke to Jackson during his incarceration. *Id.* at ¶ 3; *Jackson Deposition* at 29. Miller was unaware of any medical problems Jackson experienced. *Miller Affidavit* at ¶¶ 4,6. He explained that the detention center contracts with Dr. Darrell Elkin to provide medical care to incarcerated inmates. *Id.* at ¶ 5. Miller had no involvement in Jackson's medical care during his incarceration. *Id.* at ¶6.

## IV. Analysis

Jackson claims that a leaking toilet in his cell caused him to develop a staph infection which was not promptly treated at the CCDC. Miller argues that he is entitled to qualified immunity because Jackson has not established that Miller violated his clearly established constitutional rights.[2] The Court agrees. There is no evidence before the Court that Sheriff Miller had any involvement or role in the conditions alleged by Jackson. Jackson acknowledged in his deposition testimony that he never spoke to Sheriff Miller. He states that he complained about the leaking toilet to several jailers who provided rags to block the leak.[3] Jackson also states that

---

[2] Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[3] It is doubtful that Jackson's allegation that he was held in a cell with a leaking toilet for a maximum of 12 days amounts to a constitutional violation. *See Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation where pretrial detainee was subjected to an overflowed toilet in his cell for four days)). Jackson acknowledged that the leak was confined to the area around the toilet, that he was allowed to shower three days a week, and that he was provided cleaning supplies. Moreover, Jackson has provided no evidence to support his claim that the leaked sewage caused his infection. *See Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006)

7

he asked jailers for help in getting medical treatment for the infection developing under his arms and on his face.[4] There is no evidence he requested help from Sheriff Miller for these issues, or that Sheriff Miller was ever aware of them.

A defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted). To the extent Jackson seeks to hold Miller accountable due to his supervisory position, Jackson's claims fail. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To the extent he seeks to hold Miller responsible because he was involved in or directly responsible for the alleged

---

("Where the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation.") *See also Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006); *Robinson v. Hager,* 292 F.3d 560, 564 (8th Cir. 2002).

[4] The evidence in the record does not support a finding that jailers were deliberately indifferent to a serious medical need that would be obvious to a layperson. He was initially told he would have to wait to see the jail doctor, and once his condition became emergent, he was taken to the hospital. His medical records indicate that he reported that the lumps under his arm and on his face developed over the two or three days before he arrived at the hospital. *See e.g., Williams v. Whitfield*, No. 2:09CV00100 JLH/BD, 2010 WL 4792146, at *2 (E.D. Ark. Nov. 17, 2010) (quoting *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir.1999) ("'[W]e have repeatedly emphasized that the need or the deprivation alleged must be *either obvious to the lay person* or supported by medical evidence, like a physician's diagnosis.'") (emphasis in original).

constitutional violations, Jackson's claims also fail because he has offered no evidence that Miller was personally involved in the alleged constitutional violations or became aware of them and, with deliberate indifference, failed to take corrective action. *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). Miller has provided sworn testimony that he never spoke with or saw Jackson while Jackson was incarcerated at the CCDC. He also testified that he was unaware of any medical problems Jackson experienced there. Doc. No. 45-1. Jackson has provided no evidence that Miller was aware of the leaking toilet or his medical condition; accordingly, Miller is entitled to summary judgment.

Jackson's official capacity claims also necessarily fail because he has not established that Miller is individually liable for an underlying substantive claim. *See Alexander v. Dallas Cty. Det. Ctr.,* No. 21-1397, 2021 WL 5121257, at *1 (8th Cir. Nov. 4, 2021); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (holding that the County cannot be held liable under § 1983 if the individual defendants are not liable). Moreover, Jackson has not alleged that the conditions he described were caused by an unconstitutional policy or custom of the County.[5]

---

[5] Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013).

## V. Conclusion

For the reasons stated herein, the undersigned recommends that Miller's motion for summary judgment (Doc. No. 43) be granted and Jackson's claims be dismissed with prejudice.

DATED this 12th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

Accordingly, Miller, as a county employee, can only be held liable in his official capacities in this case if Jackson can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009).